# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EVLICIA JACKSON-LONG, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 3191 |
| | ) |
| VILLAGE OF MATTESON, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendants' motion to dismiss. For the reasons stated below, the motion to dismiss is granted.

## BACKGROUND

Defendants Sergeant Michael Jones and Detective Jeremy Sims (Sims) (collectively referred to as "Individual Defendants") are police officers for Defendant Village of Matteson. In May 2009, Individual Defendants and other unknown officers allegedly conducted surveillance of Plaintiff Evlicia Jackson-Long's (Jackson-Long) residence (Barn Owl Drive Residence) in Matteson, Illinois. Individual Defendants allegedly then obtained a search warrant (Search Warrant) and

1

raided the Barn Owl Drive Residence in search of illegal drugs and evidence of a drug distribution operation. Jackson-Long asserts that it should have been apparent to officers conducting surveillance that she was operating a daycare business at the residence. Jackson-Long claims that she placed video surveillance cameras at her residence to protect the children at her daycare operations. Jackson-Long contends that Individual Defendants omitted facts regarding the daycare operations from the Search Warrant application and accompanying affidavit (Affidavit). Specifically, Sims allegedly indicated that drug trafficking operations often use video cameras to conduct counter-surveillance and Sims allegedly failed to indicate that the daycare operations at the Barn Owl Drive Residence provided a legitimate explanation for the video cameras.

Jackson-Long also alleges that, in order to harass and humiliate her, Individual Defendants delayed the execution of the Search Warrant until children from the daycare were present. Jackson-Long includes in her complaint claims alleging an unlawful search and seizure brought under 42 U.S.C. § 1983 (Section 1983). Jackson-Long contends that Defendants purposefully delayed the execution of the Search Warrant. Defendants move to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), a court must "accept as true all of the allegations contained in a complaint" and make reasonable inferences in favor of the plaintiff. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(stating that the tenet is "inapplicable to legal conclusions"); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). To defeat a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted)(quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint that contains factual allegations that are "merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

## DISCUSSION

I. Section 1983 Unlawful Search Claims

Defendants argue that Jackson-Long has failed to present facts that plausibly suggest any unlawful search in violation of the Fourth Amendment. An affidavit by a law enforcement officer "supporting a search warrant carries with it a presumption

of validity." *Suarez v. Town of Ogden Dunes, Ind.*, 581 F.3d 591, 596 (7th Cir. 2009). If a plaintiff challenges the information provided by law enforcement officers in support of a search warrant, the plaintiff must show "that the officers knowingly or intentionally or with a reckless disregard for the truth made false statements to the judicial officer and show that the false statements were necessary to the judicial officer's determination that probable cause existed." *Id.* (internal quotations omitted)(quoting *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003)). The same standard is applied when a plaintiff alleges that the officers made material omissions from the information provided in support of the search warrant. *Id.*

Although Jackson-Long asserts that Sims purposefully omitted information from the Affidavit, the pleadings do not indicate that, even if such an omission was made, it was a material omission. *See Parkey v. Sample*, 623 F.3d 1163, 1165 (7th Cir. 2010)(indicating that a plaintiff needs to show that the officer applying for a search warrant "knowingly or intentionally or with a reckless disregard for the truth made misstatements to the magistrate and show the statements were necessary to the magistrate's probable cause determination")(internal quotations omitted)(quoting *Molina*, 325 F.3d at 968).

The crux of Jackson-Long's unlawful search claims is her contention that

4

when requesting the search warrant from the state court judge, Sims indicated that video cameras are used by drug traffickers to conduct counter-surveillance and failed to inform the judge that Jackson-Long was operating a daycare facility. (Ans. 2). Jackson-Long argues that such information would have explained the use of video cameras at the Barn Owl Drive Residence. However, Jackson-Long fails to recognize that, aside from Sims' statements regarding the use of video cameras, in support of the Search Warrant Sims provided ample other facts indicating that evidence relating to a drug trafficking operation was located at the Barn Owl Drive Residence.

Defendants have attached to their motion to dismiss a copy of the Affidavit signed by Sims. A court can consider a document attached as an exhibit to a motion to dismiss, without converting the motion into a summary judgment motion, if the document was "referred to in the plaintiff's complaint and [is] central to [the plaintiff's] claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006)(internal quotations omitted)(quoting *Wright v. Assoc. Ins. Cos.,* 29 F.3d 1244, 1248 (7th Cir. 1994)). In this case, Jackson-Long specifically references in her complaint the Search Warrant, the application for the Search Warrant, and the "accompanying affidavit. . . ." (Compl. Par. 6). Jackson-Long also bases her unlawful search claims on her contention that Sims failed to include certain

information in the Affidavit. Thus, the Affidavit is referenced in the complaint and is central to Jackson-Long's claims, and can be considered in ruling on the instant motion to dismiss.

Although Jackson-Long contends that Sims should have included information in the Affidavit regarding the daycare operation, Jackson-Long has not alleged any facts in her complaint that would contradict any of the facts set forth in the Affidavit. Sims indicates in the Affidavit that he has extensive experience in investigating violations of state narcotics laws and is familiar with the tactics used by narcotics traffickers. (Aff. 4). Sims also indicates that he discovered that Jackson-Long and her husband, Roy Long (Long), were connected to a residence at 6229 Streamwood Lane (Streamwood Lane Residence), which was being used for a drug trafficking operation. Sims explains in the Affidavit that in 2009, based on citizen calls, police officers were dispatched to the Streamwood Lane Residence to investigate a burglary in progress. (Aff. 4). Police officers stopped a vehicle fleeing from the scene of the burglary (Vehicle). (Aff. 4). In the Vehicle, police found plastic bags containing cannabis and boxes with individually wrapped bricks of cannabis. (Aff. 5). Police recovered 237 pounds of cannabis from the Vehicle. (Aff. 5). One of the occupants of the Vehicle informed police that he thought that there was a thousand pounds of cannabis in the Streamwood Lane Residence. (Aff. 5).

6

Police then inspected the outside of the Streamwood Lane Residence and found cardboard boxes matching those found in the Vehicle. (Aff. 5). Police also observed, through an open storm door, various bags and boxes in the garage similar to those found in the Vehicle. (Aff. 5). Police also detected a strong odor of cannabis and observed bags of suspected cannabis and cannabis residue in the garage. (Aff. 5). The Streamwood Lane Residence also had security cameras mounted outside that provided a view of the house and garage. (Aff. 6).

Police obtained a search warrant for the Streamwood Lane Residence and garage, and upon searching the buildings, it appeared that no one resided at that residence. (Aff. 6). The garage contained cannabis and various items such as packing materials and a digital scale, indicating that the garage was being used for a drug trafficking operation. (Aff. 6-7). Police also found various evidence in the Streamwood Lane Residence and garage that connected Jackson-Long and Long to the Streamwood Lane Residence. For example, inside the Streamwood Lane Residence and garage, police discovered various pieces of mail addressed to Long or Jackson-Long. (Aff. 6). Some mail also was addressed to the Ya-Ya Learning Center. (Aff. 6). In addition, police discovered photos, and through contacts and driver's license records, police were able to verify that the photos were of Long and Jackson-Long. (Aff. 7). Jackson-Long and Long were also listed as residents of the

7

Streamwood Lane Residence on certain utilities records. (Aff. 6).

Police also discovered a connection between Long, Jackson-Long, and one of the occupants of the Vehicle (Occupant), who was caught fleeing from the burglary. (Aff. 7). The Occupant indicated that although he did not know Long or Jackson-Long by name, he was acquainted with them. (Aff. 7). The Occupant also indicated that he knew Long from past gang-related activities. (Aff. 7). The Occupant stated that he broke into the garage because he knew that large amounts of cannabis were located there and that he fled when an audible alarm went off during the burglary. (Aff. 7). Police also discovered that, although no one apparently was living at the Streamwood Lane Residence, Long had been seen there by a neighbor less than a day before the burglary. (Aff. 5).

Police then did further investigation and discovered that Jackson-Long and Long had another residence, the Barn Owl Drive Residence. (Aff. 8). Police also discovered that, although Jackson-Long and Long lacked any apparent sources of income, they had deposited certain funds in a bank account, owned various properties, and had six vehicles. (Aff. 10-11). Police also discovered that Long has five previous arrests and one criminal conviction for involvement with cannabis. (Aff. 12).

Sims indicated in his Affidavit that, based on his prior experience, narcotics

8

traffickers keep documents that contain records of their transactions and their efforts to launder money. (Aff. 4). Sims had evidence of an ongoing drug trafficking operation at the Streamwood Lane Residence, which was owned by Long and contained mail and photos of both Long and Jackson-Long, and at which Long had recently been seen at by neighbors. The search of the Streamwood Lane Residence indicated that no one resided at the residence and police did not discover any records concerning the drug trafficking operation or any records indicating how funds from the operation were being laundered. Sims thus had a reasonable basis for the purposes of the Search Warrant to conclude that records of the operation and money laundering were present at the Barn Owl Drive Residence where Long and Jackson-Long resided.

Based on Sims' investigation, he had probable cause to believe that there was evidence of a drug trafficking operation being operated by Long and possibly Jackson-Long and evidence showing that Long and Jackson-Long resided at the Barn Owl Drive Residence. Even if Sims had known that Jackson-Long was operating a daycare operation and had specified in the Affidavit that it appeared that Jackson-Long was operating a day-care operation at the Barn Owl Drive Residence, such facts in no way would negate the ample information indicating that evidence relating to a drug trafficking operation was located at the Barn Owl Drive Residence. There

9

were facts presented by Sims far beyond the fact that there were security cameras at the Barn Owl Drive Residence that provided probable cause for the Search Warrant. Also, even if facts were presented by Sims that indicated that Jackson-Long was operating a legitimate business at the Barn Owl Drive Residence, such facts, for the purposes of the Search Warrant, would in no way contradict the evidence tying Long to the drug trafficking operation and indicating that Long resided at the Barn Owl Drive Residence.

Whether the police ultimately discovered any evidence of drug trafficking operations at the Barn Owl Drive Residence is irrelevant for the purposes of assessing whether police had probable cause for the Search Warrant. *See Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009)(stating that "the validity of the warrant is assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate" and that "[i]nformation that emerges after the warrant is issued has no bearing on this analysis"). The Affidavit, which is referenced by Jackson-Long herself in her complaint, and the facts in the Affidavit, which are not contradicted by Jackson-Long's complaint, clearly show that Sims had collected sufficient evidence to form a reasonable belief that evidence relating to a drug trafficking operation was located at the Barn Owl Drive Residence for the purposes of the Search Warrant.

Jackson-Long also argues in her response to the instant motion that her constitutional rights were violated because Defendants allegedly executed the Search Warrant "when kids were present (but not their parents), (with guns drawn) . . . ." (Ans. 1). There is, however, no such allegation in the complaint regarding drawn guns, and Jackson-Long cannot augment her complaint in her response to the motion to dismiss in order to avoid dismissal. Defendants also correctly point out that even if children from the daycare operation were present when the Search Warrant was executed, that, in and of itself, fails to suggest any violation of Jackson-Long's constitutional rights. In addition, even if Sims delayed the execution of the Search Warrant as alleged by Jackson-Long until children from daycare operation were present, that would not indicate a constitutional violation. Thus, even when accepting Jackson-Long's allegations as true, there are not sufficient facts to indicate a violation of Jackson-Long's constitutional rights. Individual Officers had probable cause to search the Barn Owl Drive Residence, and Jackson-Long has not alleged facts that plausibly suggest any constitutional violation. Therefore, Defendants' motion to dismiss is granted.

The court notes that to the extent that Jackson-Long seeks to bring any state law claims, she has not provided sufficient facts to plausibly suggest any state law claims and, even if she had done so, after considering all of the pertinent factors

available to the court and, as a matter of discretion, the court would decline to exercise supplemental jurisdiction over any properly brought state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994); *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007); *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).

## CONCLUSION

Based on the foregoing analysis, Defendants' motion to dismiss is granted.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 14, 2011